945 A.2d 1284

IN RE: RIVERVIEW PROFESSIONAL SERVICES, INC.

March 13, 2008.

This matter having come before the Court on petitions for review of the December 13, 2006 letter decision of the Committee on the Unauthorized Practice of Law (UPLC) holding that "nurses at Riverview Professional Services may appear as 'authorized representatives' of insurance companies at Personal Injury Protection [PIP] arbitrations and may make medical arguments, but that they may NOT make legal arguments or espouse any legal opinions,"

And the Court having granted the petitions for review filed by appellant National Arbitration Forum (A–24–07) and intervenor-appellant Riverview Professional Services, Inc., (A–81–07) and having heard oral argument of the parties,

And the Court having determined that disposition of the matter should abide the development of an appropriate record,

And good cause appearing;

IT IS ORDERED that the matter is temporarily remanded to retired Superior Court, Appellate Division, Judge Steven L. Lefelt, sitting as a Special Master, to conduct hearings and develop a record that will aid the Court in determining whether the activities of nurses at PIP arbitrations pursuant to the dispute resolution provisions of the Automobile Insurance Cost Reduction Act (AICRA), *N.J.S.A.* 39:6A–5.1, constitute the unauthorized practice of law; and it is further

ORDERED that in addition to addressing the general questions of the advantages and disadvantages of the practices in question, as well as the risks, costs, and benefits to the parties and the public, the Special Master shall create a record that informs the Court in respect of the following:

1. The specific mechanics of PIP arbitrations and the manner in which the hearings presently are conducted, to wit:

a. Whether the arbitrator receives advance submissions from the parties? If so, whether the parties' submissions are factual or legal in nature; that is, are they compilations of existing treatment records, written analyses or legal opinions in respect of the coverage in dispute, or are they medical explanations or opinions in respect of the treatment for a given diagnosis?

b. What is the present structure and formality of the proceedings? Specifically, are non-attorneys such as claims representatives or other insurer employees permitted to appear and advance the positions or explanations of the insurer? Do the parties present their positions as in a court hearing? Are witnesses examined and cross-examined and, if so, by whom? What are the range and average length of PIP arbitration hearings? How proactive a role does the arbitrator play in the elicitation of facts? And, does the Administrator of the PIP arbitration system have any rules or procedures in respect of the role, if any permitted of non-attorneys?

c. What is the manner of the decision-making? Is it written or oral? Must the decision be supported by a statement of reasons and findings?

d. What avenues of appeal or review exist for the arbitrator's decision and what is the nature of the appellate forum? What is the nature of the record on which any appeal is based?

2. What types of claims are presented at PIP arbitration hearings? What are the range and average values of the presented claims?

3. What types of issues are most commonly raised at the hearings? To what degree do medical or legal issues predominate?

4. Based on the most recent available statistics, how many PIP arbitration hearings were conducted per year over a five-year

period? How many have involved nurses, claims representatives or other non-attorney insurance employees as representatives of the insurer?

5. Do the percentage and number of matters involving nurses or other non-attorney representatives of insurers vary with the value of the claim and, if so, what is the practice?

6. What is the impact of the practice under review in respect of cost savings to the parties who are either represented by non-attorney representatives or are self-represented, and those represented by counsel? What evidence is there that the practice results in costs or cost savings to the public?

7. What are the risks to the parties and how do they obtain knowledge of those risks?

8. May nurses, claims representatives, or other non-attorney insurance company employees serve both as an advocate and a witness? Are there any limitations currently imposed on nurses or other non-attorney representatives in respect of the issues that they may address at the arbitration hearings?

9. What experiential requirements and/or training requirements exist for the nurses and other non-attorney representatives who are being permitted to appear on behalf of insurers? Do any ethical codes apply to their representational activities in those proceedings?

10. What are the advantages and disadvantages of the practice under review when compared with hearings at which counsel represent insurance companies?

11. What are the potential problems and the actual incidence of problems when nurses, claims representatives, or other non-attorney employees represent insurance companies at PIP arbitration hearings? Can you identify and quantify problems that have occurred?

12. Is there evidence of complaints about the non-attorney representatives' conduct in PIP arbitration hearings? If so, to

whom are the complaints made? Please collect and provide any statistics about the nature and frequency of complaints?

12. To the extent that other states have substantially similar statutory and regulatory frameworks, what is the comparable practice in those states? and it is further

ORDERED that appellants shall share the cost of providing the Special Master with expedited copies of the transcripts of all proceedings conducted pursuant to this remand; and it is further

ORDERED that within forty-five days of the completion of the hearings, the Special Master shall file his report and the original record with the Clerk of the Court, setting forth all factual findings and, to the extent deemed appropriate, any legal conclusions; and it is further

ORDERED that Riverview shall bear the responsibility, including the cost thereof, of providing all parties with a copy of the report and the record, within ten days of the Special Master's filing of the report and record; and it is further

ORDERED that the parties and *amicus curiae* shall serve and file nine copies of briefs commenting on the Special Master's report within twenty-one days of it being served on them; and it is further

ORDERED that the parties and *amicus curiae* shall serve and file any responding comments within ten days thereafter.